HOWARD POOL ET AL., APPELLEES, v. DONALD E. DENBECK ET AL., APPELLANTS.

241 N. W. 2d 503

Filed April 28, 1976. No. 40342.

Arlen D. Magnuson of Magnuson & Magnuson, for appellants.

Michael O. Johanns and Edward E. Hannon of Cronin & Hannon, and William G. Blackburn of Cunningham, Blackburn, Von Seggern & Livingston, for appellees.

Heard before SPENCER, NEWTON, and CLINTON, JJ., and WARREN and RIST, District Judges.

RIST, District Judge.

This is an action for injunctive relief brought by plaintiffs who are the owners and occupants of residential properties in Country Club Estates Addition, a platted subdivision near the city of O'Neill, Nebraska, against defendants, who have moved an older house into said subdivision and constructed additional apartment units in connection therewith. Plaintiffs alleged the acts of defendants were in violation of restrictive covenants contained in the plat and dedication of said subdivision, which limit the kind and usage of structures therein, and prayed for injunctive relief restraining defendants from further developing said structure and to remove all or any portion thereof as violates the covenants. After trial, which included an inspection by the trial judge of the entire subdivision and the structure of defendants complained of, the trial court found defendants to be in violation of the covenants and entered its decree directing defendants to remove the entire structure or so much thereof that the portion remaining would comply with the covenants, and ordered the issuance of a mandatory injunction directing such action. Defendants have perfected their appeal to this court.

An action for injunctive relief is an equitable action and is considered de novo in this court. Keim v. Downing, 157 Neb. 481, 59 N. W. 2d 602.

The record reflects that on September 14, 1970, the owners of certain lands proceeded to plat thereon the subdivision known as Country Club Estates and to dedi-

cate the same. The subdivision is near but not within the corporate limits of the city of O'Neill, Nebraska. The dedication of the plat contained 11 restrictive covenants which are to be in effect for 25 years and which run with the land, among which are the following: No. 4. Not more than one residence and attached garage shall be erected or constructed upon any lot shown upon the annexed plat. No. 5. No building of any kind whatsoever shall be erected or maintained on said land except a private dwelling house and attached garage. No. 6. All lots in the tract shall be known and described as residential lots. No structures shall be erected, altered, placed, or permitted to remain on any building plot other than one detached single dwelling not to exceed two stories in height and a private attached garage for not more than three cars. No. 12. No previously constructed building may be moved onto any of the said lots.

In 1973 and 1974 the plaintiffs purchased or built their respective residences in the southeast portion of the subdivision. These houses are valued generally in the area of $50,000, face the O'Neill Country Club Golf Course, and without dispute are regarded as being among the more desirable and expensive homes in the area.

The deeds to plaintiffs (except plaintiff Pool) recite the conveyances are subject to the restrictive covenants of the plat.

By deed dated October 22, 1974, and recorded November 19, 1974, the defendant Debra Denbeck acquired title to Lot 8, Block 3, Country Club Estates Addition from one of the parties initially dedicating the subdivision. Debra is the 20-year-old daughter of defendants Donald and Darlene Denbeck and a university student. This conveyance recites it is subject to the restrictive covenants in the recorded plat. This lot is north and west of those owned and occupied by the plaintiffs.

On or about November 1, 1974, defendants moved a house estimated to be 30 years or more old onto Lot 8.

Defendant Donald Denbeck had purchased the house for $2,250 at its original location near Atkinson, Nebraska. The house is two-and-a-half stories high. Additionally, defendants immediately commenced the construction of two two-bedroom apartments, one story high, and attached to the old house. Donald is a building contractor who has built a number of the houses in this addition including those of the plaintiffs. He and his wife, Darlene, owned a number of the lots in the subdivision upon which they have constructed houses and then sold them. Donald applied for and obtained a building permit for the work done on Lot 8 and has carried out the remodeling of the old house and the construction of the new apartments. Donald and Darlene are without question the principal parties in moving in the old house and carrying on the new construction on their daughter's lot.

Defendants first challenge the sufficiency of plaintiff's petition to state a cause of action, claiming that it pleads only conclusions respecting plaintiffs' damages and a lack of an adequate remedy at law. The amended petition, after pleading plaintiffs' ownership of their lots, the plat and dedication of the subdivision including the restrictive covenants, and defendants' actions, further pleads that defendants intend to continue to allow the buildings on Lot 8 to remain, in violation of the covenants, which would be to the permanent damage of plaintiffs' new homes and that they have no adequate remedy at law.

We believe the petition is sufficient. As stated in Reed v. Williamson, 164 Neb. 99, 82 N. W. 2d 18: "Injunction is in this class of cases (violation of a restrictive covenant) an appropriate if not the only adequate remedy. * * * 'A remedy at law would be inadequate and would lead to a multiplicity of actions and the subversion of this * * * scheme of improvement and development would still remain. * * *.'" Defendants claim

that the amended petition is insufficient is without merit.

The issue then to be resolved is whether the acts of the defendants violate the restrictive covenants of the plat. Defendants contend the covenants are vague and ambiguous and that by any reasonable construction of them they are not in violation.

Covenant No. 6 limiting the height of structures to two stories is not ambiguous and the house defendants moved into the subdivision clearly violates it.

With respect to whether an apartment house violates the covenants, defendants contend the words "dwelling house," "dwelling," and "one residence" as used in the covenants do not prevent the use of such structures for apartments, citing cases from other jurisdictions in support of such interpretation. As pointed out in plaintiffs' brief, the operative words in covenant No. 4 are "one residence," in covenant No. 5 "private dwelling house," and covenant No. 6 "one detached single dwelling."

From a review of the cases we believe that, in considering the covenants as a whole, they limit the use of the lots in this subdivision to a dwelling house to be used by one family. The Supreme Court of Michigan construed the words "private dwelling house" to mean a single dwelling to be used by one family. Seeley v. Phi Sigma Delta House Corp., 245 Mich. 252, 222 N. W. 180. We agree with this interpretation. This court, in the case of Hogue v. Dreeszen, 161 Neb. 268, 73 N. W. 2d 159, held that where there was a general plan for a development of an area or district for residential purposes, the purposes as stated in the covenants should control. This court went on to hold that such covenants apply to use as well as the character of the building. Defendants' stated purpose was to use at least a portion of their structure as apartment units and they were built accordingly. We conclude that such construction and use is in violation of the covenants noted above.

Finally, covenant No. 12 provides that no previously

constructed building may be moved onto any lot in the subdivision. Defendants have clearly done this and are in violation of this covenant.

We next consider whether or not defendants are excused in their actions and the covenants rendered unenforcible as to them because of other circumstances.

Defendants assert that plaintiffs are guilty of laches in instituting their action and that by the time plaintiffs filed their petition defendants had expended a substantial amount of money in their efforts.

The record reflects that on or about November 1, 1974, defendants moved the old house on their lot and were constructing the apartment units; that a telephone protest by one of the plaintiffs was made to defendants on or about that date; that defendants sought to placate some of the plaintiffs at or about that time with photographs of what they intended to do; and that plaintiffs' attorney was first contacted November 11, 1974, and suit filed and service had in approximately 3 weeks after November 1, 1974. We conclude plaintiffs acted in a timely manner.

The record justifies the conclusion that defendants acted with deliberate haste in getting their house moved in and proceeding with the construction of the apartment units knowing of the dissatisfaction and protest of other homeowners in the subdivision. Whatever their investment, defendants elected to proceed in the light of this knowledge and in light of both constructive and actual notice of the covenants, and are in no position to assert laches.

Defendants next contend that plaintiffs have acquiesced in and condoned other violations of covenants by other homeowners in the subdivision and thereby have abandoned them, thus rendering the convenants unenforcible.

The evidence reflects the following: In the northwest corner of the subdivision, at a considerable distance from the plaintiffs, there are several modular homes

which were either moved in as a unit or in sections, one of them with a basement apartment under it. A double-width trailerhouse was placed on a foundation and is also located in this area. A golf driving range with a small building lies some distance west of plaintiffs' homes. For a time, one of plaintiffs had a doghouse or kennel in his backyard and one of plaintiffs' homes may be several feet too close to the side lot line.

The record further shows that some of the modular homes were in place when plaintiffs, or some of them, purchased their homes and that some, but not all plaintiffs, had no objection to them. It is not clear if plaintiffs had notice of the apartment under one of such homes. There is evidence that the development of this addition to date of trial had been the erection of the more expensive homes in the area of plaintiffs in the southeast portion of the addition and the so-called modular homes in the north and west portion thereof, with considerable vacant area between such homes and plaintiffs. Defendants' structure is in the north central part of the addition and in clear view from plaintiffs' homes. The modular homes are not so visible from there.

Defendants argue that the modular and trailer homes violate the covenant on moving preconstructed buildings into the subdivision, and since plaintiffs have knowingly accepted them without protest, covenant No. 12 must be considered abandoned by them. Likewise since plaintiffs made no protest of the apartment in one of the modular homes, the defendants argue that if such use is in violation, plaintiffs have condoned and acquiesced in it and, accordingly, covenants Nos. 4, 5, and 6 are unenforcible.

It is well settled in most jurisdictions that the right to enforce restrictive covenants may be lost by waiver or acquiescence of violation of the same. See generally 20 Am. Jur. 2d, Covenants, Conditions, Etc., § 273, p. 832. Whether there has been such a waiver or acquiescence depends upon the circumstances of each case.

The criteria for determining this includes whether those seeking to enforce the covenants had notice of the violation and the period of time in which no action was taken; the extent and kind of violation; the proximity of the violations to those who complain of them; any affirmative approval of the same; whether such violations are temporary or permanent in nature; and the amount of investment involved.

"As a rule, nonobjection to trivial breaches of a restrictive covenant does not result in loss of the right to enforce the covenant by injunction, and acquiescence in violations * * * which are immaterial and do not affect or injure one will not preclude him from restraining violations thereof which would so operate as to cause him to be damaged. Thus, a lot owner's failure to object to violations * * * on lots remotely situated from his lot does not deprive him of the right to enforce the restriction for a violation on lots in close proximity to his lot which would be especially and directly injurious to him." 20 Am. Jur. 2d, Covenants, Conditions, etc., § 274, p. 835.

" 'Plaintiffs are not estopped from preventing a most flagrant violation of the restrictions on account of their theretofore failure to stop a slight deviation from the strict letter of such restrictions.' " Hogue v. Dreeszen, *supra.*

In light of the rules set forth above and in considering the evidence, we conclude that if the modular and trailer homes violate covenant No. 12, they were nonetheless at a considerable distance from plaintiffs' homes and would not constitute a violation materially affecting plaintiffs. While the apartment in the one modular home is in violation of the covenants, it too is at a great distance from plaintiffs and had no material effect upon them. As previously indicated it is not clear whether plaintiffs even had knowledge of the same. The driving range for all practical purposes involves no structure of any significance and it too is a considerable distance from

plaintiffs' homes. The other violations noted are of no significance for the purposes of this case.

We further note that defendants' structure, which is in clear violation of the covenants, is in closer proximity to plaintiffs' homes, is in clear view of them, and by its appearance and proposed use can be fairly said to materially detract from the residential values plaintiffs seek to protect by enforcement of the covenants.

We are therefore of the opinion that plaintiffs have not so acquiesced in the violation of the covenants by other owners in the subdivision that they are estopped or barred from seeking injunctive relief against defendants for what may be fairly described as a clear and flagrant violation by defendants of the covenants noted and which materially affect plaintiffs.

That plaintiffs have a right to seek enforcement of the covenants is clear, the dedication declaring them to run with the land and being for the mutual benefit of all owners in the subdivision as well as being noted in the deeds of the parties.

Defendants have assigned a number of other alleged errors by the trial court which assignments are not sustained by the record and require no further action by this court.

The judgment and decree of the trial court is therefore affirmed and the cause remanded with directions to issue a mandatory injunction in accordance with the trial court's decree, directing defendants within 60 days from the issuance of the writ either to remove the entire structure located on Lot 8, Block 3, Country Club Estates, or so much thereof that the remaining structure as appropriately modified will be in full compliance with the restrictive covenants of the plat of said subdivision.

Costs herein are taxed to defendants.

AFFIRMED AND REMANDED WITH DIRECTIONS.