M. O. CUNNINGHAM, APPELLANT, V. DOUGLAS COUNTY ET AL., APPELLEES.

FILED APRIL 17, 1920.    No. 21422.

1. Counties: TAXATION: CONSTITUTIONAL LAW.  Section 1, S. F. No. 1, passed by the special session (Thirty-Ninth) of the legislature, which provides that the county shall "have power to levy a tax not exceeding, together with all other tax levies, fifteen (15) mills on the dollar upon the actual or full market valuation of the property in the county," to create a fund for the payment of certain bonds and interest thereon, is not unconstitutional as violative of section 5, art. IX of the Constitution, limiting taxes to $1.50 per $100 valuation.

2. Constitutional Law: TAXATION: CLASSIFICATION.  "The power of classification rests with the legislature, and this power cannot be interfered with by the courts, unless it is clearly apparent that the legislature has by an artificial and baseless classification attempted to avoid and violate the provisions of the Constitution prohibiting local and special legislation." *Allan v. Kennard*, 81 Neb. 289.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE.  *Affirmed.*

*M. O. Cunningham, pro se.*

*Abel V. Shotwell, contra.*

*Jesse L. Root, Byron Clark, Edson Rich, C. A. Magaw, J. A. C. Kennedy, Wymer Dressler, E. P. Holmes, B. F. Good* and *Paul F. Good, amici curiæ.*

CORNISH, J.

Action to enjoin the issuance of certain bonds by the defendant county, and the levying of taxes to provide a fund for the payment of principal and interest accruing on the bonds.  Plaintiff appeals from a judgment dismissing his action.

Section 1 of S. F. No. 1, passed by the special session (Thirty-Ninth) of the legislature, authorizes an issuance

of such bonds, and provides that the county shall "have power to levy a tax not exceeding, together with all other tax levies, fifteen (15) mills on the dollar upon the actual or full market valuation of the property in the county," to create a fund for their payment.

It is contended that this enactment is in contravention of section 5, art. IX of the Constitution, as follows: "County authorities shall never assess taxes the aggregate of which shall exceed one and a half dollars per one hundred dollars valuation, except for the payment of indebtedness existing at the adoption of this Constitution, unless authorized by a vote of the people of the county."

Section 1, art. IX of the Constitution, is as follows: "The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises, the value to be ascertained in such manner as the legislature shall direct," etc.

The contention is that, inasmuch as S. F. No. 1 authorizes the tax and bond issue without a vote of the people, the law is unconstitutional, if the tax proposed exceeds the limit provided in section 5, art. IX of the Constitution, that the valuation meant in section 5 is the same as that meant in section 1 and is a "value to be ascertained" by legislative method, and not actual or market value as provided in S. F. No. 1; that in pursuance of section 1, *supra*, the legislature has fixed valuation for assessment and taxation purposes at 20 per cent. of actual value, and has forbidden a levy of taxes in excess of $1.50 on assessed valuation (Rev. St. 1913, secs. 954, 6300); that S. F. No. 1 does permit a tax in excess of $1.50 on assessed or taxable value so ascertained, and hence is unconstitutional.

We are of opinion that the question whether the constitutional limitation is to be determined by taking

property at its actual or market value, on the one hand, or by taking it at its assessed valuation, or valuation ascertained in a manner prescribed by the legislature, on the other, is not involved in considering the validity of S. F. No. 1. Conceding that the valuation meant in section 5, art. IX of the Constitution, is not actual or market value, but the valuation ascertained in a manner prescribed by legislative enactment, S. F. No. 1 cannot be said to violate the constitutional provision. It does prescribe the manner in which the valuation of the property, subject to the tax, is to be ascertained. It is to be valued at its actual or market value for the purpose of making a levy to raise the tax provided for. Such is its taxable value. It is true that, for the purposes of the particular tax, the property being taxed is taken from under the provisions of section 6300, Rev. St. 1913, and to that extent may be said to amount to a repeal of the provisions of section 6300, as applied to the particular tax and property; but it is also true that the valuation is as much one ascertained by legislative method as if, by law, it were assessed in accordance with section 6300. The tax, combined with others, not being in excess of $1.50 for $100 valuation. and the valuation not being greater than the actual or market value, S. F. No. 1 can hardly be said to be contrary to the constitutional provision.

It is also contended that S. F. No. 1 is unconstitutional as in contravention of section 15, art. III of the Constitution, prohibiting certain special legislation, and containing, among others, this provision: "Where a general law can be made applicable, no special law shall be enacted."

The act provides that, when any county of 150,000 or more population, by reason of fire, riot or other casualties, suffers a partial destruction of its courthouse or other public building, or destruction of records, the county board may, for the purpose of repairing the building or restoring records and other property named, with-

out a vote of the people, issue and sell bonds and levy taxes, as above described.

Whether such a classification, based on population and the kind of emergency described, is permissible is a difficult question. It is, in the first instance, a question of legislative discretion. The courts will not interfere with the discretion lodged in the legislature unless it is apparent that the classification is artificial and baseless, showing an attempt upon the part of the legislature to violate the provision of the Constitution prohibiting local and special legislation. With much doubt and hesitation, we have concluded that we ought not to hold the enactment void for this reason. *Allan v. Kennard*, 81 Neb. 289; *Weston v. Ryan*, 70 Neb. 211; *State v. Hunter*, 99 Neb. 520.

AFFIRMED.

ROSE, J., not sitting.

LETTON, J., dissenting.

In 1919, the authorities of Douglas county were confronted with a serious situation, fraught with possibility of grave danger to the public welfare. In this emergency the governor was prevailed upon to call a special session of the legislature, the county authorities evidently believing that by the passage of an act of the legislature more speedy relief might be afforded than available by the usual, ordinary and legal method of submission of the question of raising money by the issuance of bonds to a vote of the people of the county.

By the act in question, in counties of 150,000 or more population, in which the courthouse, jail or other county public buildings have been injured by fire, riot, mob, storm, or other casualty, the county board is given power to issue bonds and levy a tax to pay the same, "not exceeding, together with all other tax levies, fifteen (15) mills on the dollar upon the actual or full market valuation of the property in the county." Did the legislature mean to allow the county authorities of such a county

to raise five times as much money for general county purposes as they had formerly been empowered to levy? If so, and the language seems susceptible of no other interpretation, the result of the act is that in the counties affected the taxes may be fivefold as much in proportion as in all other counties of the state.

To allow the county authorities of such counties to impose at their discretion a fivefold greater burden of taxation for county purposes without a vote of the people makes an arbitrary distinction between counties without any reasonable basis of classification. In any county in the state the public buildings are liable to be injured by fire, riot, mob, storm, or other casualty. It is a matter of public knowledge that courthouses, jails, and other public buildings have been destroyed by such forces in quite a number of counties in this state. What reasonable basis is there for making this distinction? It is true a classification by population so as to provide for local administration has usually been upheld, but there is a clear distinction between such legislation and the act we are considering. I realize the conditions in Douglas county, but I believe the majority opinion clearly exemplifies the old adage that "hard cases make poor law." In my judgment the act is a special law, and violates section 15, art. III of the Constitution, providing that "In all other cases where a general law can be made applicable, no special law shall be enacted."