REQUESTED BY: Senator Richard Maresh State Capitol Lincoln, NE
Dear Senator Maresh:
We have reviewed your letter of March 31, 1981, concerning the filing and processing of `miscellaneous claims' under Neb.Rev.Stat. § 81-8,236 to 81-8,239 (Reissue 1976) and, in particular the claim of Joseph J. Soukup. You asked our opinion on five questions.
First, you ask whether the State Claims Board was in compliance with the requirements of Neb.Rev.Stat. § 81-8,239
(Reissue 1976) when it approved the payment of Mr. Soukup's claim without specifying a precise dollar amount. The above statute requires only that the Board approve the claim, disapprove the claim, or approve the claim `with conditions or limitations.' While the latter phrase would include approval of a claim in an amount less than claimed, the plain language would also permit approval of the claim subject to standards for determination of the dollar amount. The Board approved the claim in part leaving the precise amount to be determined by the Legislature after considering Mr. Soukup's need for vocational and medical rehabilitation services and treatment. We believe that satisfies the statutory option for approval with conditions or limitations.
Second, you inquire whether there are any statutes of limitation which apply to the payment of `miscellaneous claims.' Neb.Rev.Stat. § 25-218 (Reissue 1979) is a general statute which applies to all claims against the state for which there is no more specific limitation. Consequently, it appears that statute would apply to the payment of claims under Neb.Rev.Stat. § 81-8,236 (Reissue 1976). However, the general rule, as expressed in 53 C.J.S. Limitations ofActions § 6b, is that a statute of limitations bars the remedy and does not discharge the debt. Accordingly, it may be argued that even though the claimant against the state no longer has a remedy for enforcement of his claim, the state may elect to pay the debt which still exists as in the situation where the state has in fact received services or merchandise but the claimant failed to collect therefor within two years.
Your third and fourth questions are related. Does the Claims Board and Legislature have jurisdiction over Mr. Soukup's claim, being in the nature of a tort claim, and, if not would payments of the claim violate Section 18 of ArticleIII of the Nebraska Constitution?
Neb.Rev.Stat. § 81-8,236 (Reissue 1976) authorizes the Board to receive and investigate other claims against the state `for the payment of which no money has been appropriated.' This could include various kinds of claims so long as no money was appropriated or if the appropriation lapsed. Neb.Rev.Stat. § 81-8,225 (Reissue 1976) provides for establishment of the Tort Claims Fund from which awards and judgments for state tort liability are to be paid. The Legislature appropriates money to that fund annually so there is always money appropriated to pay tort claims. Consequently, a tort claim is not a claim `for the payment of which no money has been appropriated' and a tort claimant is not entitled to the benefits of Neb.Rev.Stat. §§ 81-8,236 to81-8,239 (Reissue 1976) but must pursue his remedy under the State Tort Claims Act, Neb.Rev.Stat. § 81-8,209 to 81-8,235
(Reissue 1976).
Article III, Section 18 of the Nebraska Constitution prohibits the Legislature from passing any special laws granting to any `individual any special or exclusive privileges, immunity or franchise whatever.' The Nebraska Supreme Court has held that a law waiving the state's immunity for the benefit of an individual violates this provision.Cox v. State, 134 Neb. 751, 279 N.W. 482. By the same logic the Legislature cannot waive the statute of limitations for the benefit of a few within a class. Bordy v.State, 142 Neb. 714, 7 N.W.2d 632.
The onus of the above section may be avoided by strictly following the procedures set forth in the statutes waiving immunity for a class of claims. For instance a person pursuing a tort claim must strictly follow the procedures in the State Tort Claims Act.
More specifically, assuming Mr. Soukup's claim is for the alleged tortious acts of state employees, the payment of such claim outside the ambit of the State Tort Claims Act would probably be held in violation of Article III, Section18 of the Nebraska Constitution. For the foregoing reasons it might also violate Article I, Section 16 of the Nebraska Constitution which provides that `no . . . law . . . making any irrevocable grant of special privileges or immunities shall be passed.'
Fifth, you inquire whether Neb.Rev.Stat. § 81-8,236
(Reissue 1976) expands the waiver of immunity granted in the State Tort Claims Act. In our opinion it does not expand the waiver of immunity but merely provides a procedure for hearing, processing, and paying claims for which no money has been appropriated, and which the state may not be legally obligated to pay. As indicated above, however, if Mr. Soukup's claim is tortious in nature, it does not fall within the `miscellaneous claim' procedure.
In summary, it is our opinion that:
1. The State Claims Board need not specify a dollar amount to be paid on a claim it approves if it sets out a standard for determination of the amount to be paid.
2. Neb.Rev.Stat. § 25-218 (Reissue 1979) appears to apply to `miscellaneous claims' but that does not preclude the payment of legitimate claims barred by the statute.
3. The State Claims Board and Legislature probably could not get jurisdiction of Mr. Soukup's `miscellaneous claim,' assuming his claim is tortious in nature.
4. Payment of Mr. Soukup's `miscellaneous claim' would probably violate Article III, Section 18 and Article I, Section16 of the Nebraska Constitution.
5. The `miscellaneous claim' statute, Neb.Rev.Stat. 81-8, 236 (Reissue 1976) does not expand the waiver of immunity but provides a procedure for processing and payment of claims for which there is not appropriation.
Very truly yours, PAUL L. DOUGLAS Attorney General John R. Thompson Deputy Attorney General