784 N.W.2d 101 (2010)
279 Neb. 935
Roger YANT et al., appellants,
v.
The CITY OF GRAND ISLAND et al., appellees.
No. S-09-664.
Supreme Court of Nebraska.
May 28, 2010.
*103 Raymond E. Walden, of Walden Law Office, James Beckmann, of Beckmann *104 Law Offices, Lincoln, and Kenneth C. Winston for appellants.
Jon Bruning, Attorney General, Dale A. Comer, and Charles E. Lowe, Lincoln, for appellees Department of Administrative Services and State Treasurer.
John C. Wiltse and Joel D. Pedersen, Lincoln, for appellee Board of Regents.
Dale M. Shotkoski, Grand Island City Attorney, for appellee City of Grand Island.
Jack Zitterkopf, Chief Deputy Hall County Attorney, for appellees Hall County Treasurer and Hall County Board of Supervisors.
Gail S. Perry, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., Lincoln, for appellee Nebraska State Fair Board.
Michael L. Johnson, of Leininger, Smith, Johnson, Baack, Placzek & Allen, for appellees Hall County Livestock Improvement Association and Hall County Agricultural Society, Inc.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ., and INBODY, Chief Judge.
HEAVICAN, C.J.

I. INTRODUCTION
Roger Yant, Brian Von Seggern, and Jerry Christensen (collectively appellants) appeal the decision of the Lancaster County District Court denying their request for a declaratory judgment declaring 2008 Neb. Laws, L.B. 1116 (LB 1116), unconstitutional. Appellants claim that LB 1116, which provided for the relocation of the Nebraska State Fair from Lincoln, Nebraska, to Fonner Park in Grand Island, Nebraska, is special legislation, and hence unconstitutional and void. We affirm the decision of the district court.

II. FACTS
The facts of this case are not in dispute. According to the record, the location of the state fair has been set by statute since 1901. Prior to the passage of LB 1116, Neb.Rev.Stat. § 2-101(3) (Reissue 2007) provided in part:
The state fair shall be held at or near the city of Lincoln, in Lancaster County, under the direction and supervision of the Nebraska State Fair Board, upon the site and tract of land selected and now owned by the state for that purpose and known as the Nebraska State Fairgrounds.
At its annual meeting in 2003, the State Fair Board admitted publicly that the State Fair and its campus were "in a dire short term and long term financial crisis."
In 2004, the Nebraska Legislature requested that an investigation be conducted into new models for the state fair. Among the alternatives suggested and considered were to not have a state fair, to relocate the state fair to another site in Lincoln or Lancaster County, or to relocate the state fair to another location in the state. Another study was conducted in 2007, and on December 14, the Legislature held a public hearing on the report generated by the study. LB 1116 was introduced on January 23, 2008, and was then referred to the Legislature's Agriculture Committee for a public hearing.
The Agriculture Committee held a public hearing on LB 1116 on February 26, 2008, giving various parties an opportunity to present arguments for and against relocating the state fair. And over the course of several days, the floor debate on LB 1116 allowed various members of the Legislature to present arguments both for and against relocating the state fair.
*105 LB 1116 was passed and is now codified at § 2-101 (Supp.2009). Section 2-101(4)(a) states:
It is the intent of the Legislature that no later than 2010 the Nebraska State Fair be permanently located within the city of Grand Island upon the site and tract of land owned by the Hall County Livestock Improvement Association and known as Fonner Park....
Subsection (b) provides:
The Nebraska State Fair Board, the Department of Administrative Services, and the Board of Regents of the University of Nebraska shall cooperate with each other and with other appropriate entities to provide for and carry out the plan to relocate the Nebraska State Fair and transfer the Nebraska State Fairgrounds in Lancaster County to the Board of Regents....
While Grand Island, Hall County, and the Hall County Livestock Improvement Association (HCLIA) were tasked with preparing Fonner Park to host the state fair, the University of Nebraska was designated to take over the fairgrounds in Lancaster County for an "Innovation Campus."[1] Thus, the effect of LB 1116 was threefold: The legislation operated to relocate the state fair from Lincoln to Grand Island, it required certain entities associated with the state fair to cooperate in relocating the fair, and it transferred the fairgrounds in Lancaster County to the University of Nebraska.
In 2008, appellants filed suit in Lancaster County District Court asking the district court to issue a declaratory judgment finding that LB 1116 was unconstitutional and void in its entirety. The district court dismissed appellants' action, finding that the statute was constitutional. This appeal followed.

III. ASSIGNMENTS OF ERROR
Appellants assign that the district court erred in finding that (1) LB 1116 did not constitute special legislation in violation of Neb. Const. art. III, § 18, and (2) LB 1116 did not improperly delegate legislative powers to private corporations. Appellants also claim that LB 1116 is unconstitutional in its entirety and that the unconstitutional portions cannot be struck.

IV. STANDARD OF REVIEW
Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the court below.[2] A statute is presumed to be constitutional, and all reasonable doubts are resolved in favor of its constitutionality.[3] The burden of establishing the unconstitutionality of a statute is on the one attacking its validity.[4]
The unconstitutionality of a statute must be clearly established before it will be declared void.[5]

V. ANALYSIS
Appellants argue that LB 1116 is unconstitutional for two reasons: first, because it violates the prohibition on special legislation found in article III, § 18, of the Nebraska Constitution, and second, because there is an unconstitutional delegation of authority to HCLIA and the State *106 Fair Board. We affirm the decision of the district court.

1. LB 1116 IS NOT UNCONSTITUTIONAL SPECIAL LEGISLATION
We first note that the burden of proving a statute is unconstitutional is on the party attacking the validity of a statute,[6] and unconstitutionality must be clearly established before a statute will be declared void.[7]
Neb. Const. art. III, § 18, provides:
The Legislature shall not pass local or special laws in any of the following cases....
....
Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever.... In all other cases where a general law can be made applicable, no special law shall be enacted.
In support of their argument, appellants cite Hug v. City of Omaha.[8] In that case, we stated:
The focus of the prohibition against special legislation is the prevention of legislation which arbitrarily benefits or grants "special favors" to a specific class. A legislative act constitutes special legislation if (1) it creates an arbitrary and unreasonable method of classification or (2) it creates a permanently closed class.[9]
Appellants argue that LB 1116 both operates upon or affects a closed class and creates arbitrary and unreasonable classifications.

(a) Closed Class
The prohibition against special legislation forbids the Legislature from selecting a class "from a large number of persons standing in the same relation to the privileges."[10] To be valid, a legislative classification "`"must be based upon some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to objects to be classified...."'..."[11] We find that LB 1116 does not violate the closed class prohibition of article III, § 18, because the Legislature had a reasonable basis for enacting a special law in furtherance of a legitimate public policy.

(i) Legislative Classification
Appellants argue that LB 1116 benefits a select few by creating closed classes represented by the city of Grand Island and the HCLIA. We have previously held that the Legislature has the power to enact special legislation where "`the subject or matters sought to be remedied could not be properly remedied by a general law, and where the [L]egislature has a reasonable basis for the enactment of the special law.'"[12] In fact, unless specifically prohibited by article III, § 18, the Legislature is not prohibited from passing local or special laws.[13]
*107 In State ex rel. Spillman v. Wallace,[14] we upheld a law that discriminated between counties that had made efforts to eradicate tuberculosis in cattle and those that had not. We stated that although a general law could have been passed that applied to all counties, to do so would have been to lose the benefits accrued by the efforts of certain counties.[15] Because the matter was one of promoting a reasonable public policy and because special laws pertaining to the regulation of cattle were not specifically prohibited by article III, § 18, the law was found to be constitutional special legislation.
In the case before us, we likewise note that none of the 21 prohibitions on special legislation may be fairly read to apply to designating a site for the state fair or permanently relocating it. Although appellants suggest that LB 1116 should have "set criteria for the State Fair Board or for some state agency to apply in taking and reviewing proposals from any communities interested in hosting the fair,"[16] we stated in Wallace that "`[i]t is for the [L]egislature to determine whether the purpose for which it legislated could be properly accomplished by a general law....'"[17]
As appellees noted, the state fair is not the only facility, program, or activity for which a permanent location has been selected by statute. In order to allocate limited resources, the Legislature has also specified the location of prisons,[18] Nebraska veterans' homes,[19] and state colleges.[20] The Legislature also has determined official locations, including setting the city of Lincoln as the permanent seat of state government,[21] and designating the State Capitol and grounds as permanent fixtures in Lincoln.[22] In this same vein, selecting a permanent location for the state fair is also a reasonable allocation of resources.

(ii) Special Privileges and Public Purpose
Appellants further argue that LB 1116 violates article III, § 18, because it gives "specific and exclusive grants of franchise, property, and privileges to specific groups."[23] In support of their argument that LB 1116 constitutes unconstitutional grants of franchise, property, and privileges, appellants cite to Haman v. Marsh.[24]
In Haman, the statute in question would have paid $33.8 million of state tax money to depositors who had suffered losses due to the failure of industrial loan and investment companies in Nebraska. When it was passed, the statute limited the defined class of recipients to three such companies. We found that the legislation was passed with the sole benefit of those three recipients in mind.[25] The benefit granted in Haman was the intended purpose of the statute, whereas the purpose of LB 1116 is to designate a permanent location *108 for the state fair. Unlike the situation in Haman, the state fair is something of interest to the entire state and is intended to benefit all Nebraskans. Indeed, appellants do not dispute this.
We have upheld expenditures for state fairs and other expositions as expenditures for a public purpose.[26] We have also previously held that incidental benefits do not render a statute unconstitutional when enacted for a public purpose.[27] And, while proximity to the state fair may benefit local businesses, those benefits are incidental to the public purpose behind LB 1116.
Hence, we find that appellants have neither overcome the presumption of constitutionality nor met their burden of showing that LB 1116 is an unconstitutional grant of special privileges or benefits.

(b) Unreasonable and Arbitrary Classification
Appellants also contend that the Legislature's decision to locate the state fair at Fonner Park in Grand Island was unreasonable and arbitrary. Appellants primarily rely on Cox v. State,[28] in which this court struck down a law that gave a tort victim a remedy against the state for injury to the victim that occurred on a state highway. Essentially, the statute in question in Cox waived sovereign immunity and the statute of limitations for one particular person. The court stated that such a law would require those similarly situated to petition the Legislature to make exceptions for each in turn.[29] Appellants contend that the same is true in this case and that the Legislature granted special favors to the State Fair Board, the HCLIA, and the University of Nebraska when it relocated the state fair to Fonner Park.
First, we note that Cox involved the grant of a civil remedy to one person out of a class of many, for no reason other than "the peculiar facts and circumstances of the injuries sustained by the plaintiff."[30] In contrast, this case involves selecting a new permanent site for the state fair, which necessarily requires selecting one location. As we noted above, the Legislature may pass a specific law where a general law cannot be made applicable and where it has a reasonable basis to do so.
Appellants argue that "nothing in [LB 1116] describes any means for choosing a new fair site. The Legislature simply put a finger on the map and said this will be the place."[31] The record indicates that quite the opposite is true, however. The State Fair Board first recognized in 2003 that the state fair and its campus were in short- and long-term financial crises that would require action. Over the next 3 years, the Legislature authorized two studies to be conducted to find alternatives for the state fair, and public hearings were held on the findings. After LB 1116 was proposed, hearings and floor debates were held, giving interested parties opportunities to provide input on the potential location of the state fair. Nothing in the record indicates that the Legislature's decision to relocate the state fair, or its *109 choice of location, was arbitrary or capricious.
We therefore find appellants' first assignment of error to be without merit because they have not met their burden of showing that LB 1116 is unconstitutional special legislation.

2. LB 1116 NOT UNCONSTITUTIONAL DELEGATION OF LEGISLATIVE POWERS
Appellants next argue that LB 1116 is unconstitutional because it delegates to private corporations the authority to spend tax revenues. LB 1116, § 6, now codified at § 2-113, provides:
(3) The University of Nebraska and the city of Grand Island shall provide certification to the Department of Administrative Services on October 1, 2008, February 1, 2009, and July 1, 2009, of all funds provided to carry out subsection (4) of section 2-101. All amounts as certified in subdivisions (2)(a) and (c) of this section shall be held and expended as determined by agreement between the [HCLIA] and the Nebraska State Fair Board.
Appellants argue that only the Legislature has the power to expend state funds and that granting authority to the HCLIA to spend state funds was an unconstitutional delegation of that power. We note that in connection with appellants' special legislation assignment, appellants argued that the Legislature exercised too much authority in moving the fair, but here, they argue that it delegated too much authority. Appellants' argument is inconsistent, and we find that the Legislature acted within the scope of its power to delegate.
A grant of administrative authority is not necessarily an unconstitutional delegation of legislative power.[32] "[W]here the Legislature has provided reasonable limitations and standards for carrying out the delegated duties, there is no unconstitutional delegation of legislative authority."[33] Those reasonable limitations and standards may not rest on indefinite, obscure, or vague generalities, however, or upon extrinsic evidence not readily available.[34]
The statutes in question do delegate spending authority, but only for specific purposes. Under LB 1116, § 1, now codified at § 2-101(4)(a), the funds expended were to "provide for and carry out any plan of improvements to [Fonner Park]," and the funds were to come from "the Nebraska State Fair Board, the [HCLIA], and other appropriate entities." LB 1116, § 6, now codified at § 2-113, quoted above, states that the University of Nebraska and the city of Grand Island were to provide certification of all funds used to carry out the move and improvements. According to § 2-113(2)(a) and (c), the funds were to be provided by or on behalf of the University of Nebraska and the city of Grand Island. Under § 2-113(4)(b), the Nebraska State Fair Board is to be responsible for any remaining costs associated with site improvements involved in relocating the fair.
It is a well-established principle that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement *110 the policy of a statute.[35] And in particular, we have said that delegation of legislative power is most commonly indicated where the relations to be regulated are highly technical or where regulation requires a course of continuous decision.[36] In this case, the Legislature set the location of the state fair, then delegated authority to prepare Fonner Park to the entities best suited to make those decisions. The statutes clearly require that all funds be spent to prepare Fonner Park and to make it suitable to house the state fair. It is not the role of the judiciary to interfere with the proper delegation by the Legislature to the State Fair Board in a situation such as this. We find there was no unconstitutional delegation on the part of the Legislature.
Appellants further contend that LB 1116 is unconstitutional because the expenditure of funds was delegated to HCLIA, a "private association."[37] However, "[t]he Nebraska Constitution does not prohibit the State from doing business or contracting with private institutions in fulfilling a governmental duty and furthering a public purpose."[38] Because, as discussed above, the state fair is considered a public purpose, the Legislature is not prohibited from delegating certain duties in connection with such public purpose.
Appellants' second assignment of error is also without merit, because they have not met their burden to show that LB 1116 was an unconstitutional delegation of authority.

3. REMAINING ASSIGNMENT OF ERROR
Appellants' final assignment of error is that LB 1116 is unconstitutional in its entirety and that the unconstitutional portions cannot be struck. Because we find no merit to appellants' argument that LB 1116 is unconstitutional, we need not reach this assignment of error.

VI. CONCLUSION
Appellants have not met their burden of showing that LB 1116 is unconstitutional. We therefore affirm the decision of the district court.
AFFIRMED.
STEPHAN, J., not participating.
NOTES
[1] See Neb.Rev.Stat. § 2-113 (Supp.2009).
[2] Pavers, Inc. v. Board of Regents, 276 Neb. 559, 755 N.W.2d 400 (2008).
[3] Id.
[4] Id.
[5] See State ex rel. Stenberg v. Omaha Expo. & Racing, 263 Neb. 991, 644 N.W.2d 563 (2002).
[6] Pavers, supra note 2.
[7] State ex rel. Stenberg, supra note 5.
[8] Hug v. City of Omaha, 275 Neb. 820, 749 N.W.2d 884 (2008).
[9] Id. at 826, 749 N.W.2d at 890.
[10] Id.
[11] Gourley v. Nebraska Methodist Health Sys., 265 Neb. 918, 938, 663 N.W.2d 43, 65 (2003).
[12] State ex rel. Spillman v. Wallace, 117 Neb. 588, 594, 221 N.W. 712, 714 (1928).
[13] Id.
[14] Id.
[15] Id.
[16] Brief for appellants at 17.
[17] Wallace, supra note 12, 117 Neb. at 595, 221 N.W. at 714.
[18] Neb.Rev.Stat. §§ 72-703 (Reissue 2009) and 83-954 (Reissue 2008).
[19] Neb.Rev.Stat. § 80-315 (Reissue 2008).
[20] Neb.Rev.Stat. § 85-301 (Reissue 2008).
[21] Neb.Rev.Stat. § 72-701 (Reissue 2009).
[22] Neb.Rev.Stat. § 72-723 (Reissue 2009).
[23] Brief for appellants at 9.
[24] Haman v. Marsh, 237 Neb. 699, 467 N.W.2d 836 (1991).
[25] Id.
[26] State v. Cornell, 53 Neb. 556, 74 N.W. 59 (1898).
[27] See State ex rel. Douglas v. Nebraska Mortgage Finance Fund, 204 Neb. 445, 283 N.W.2d 12 (1979).
[28] Cox v. State, 134 Neb. 751, 279 N.W. 482 (1938).
[29] Id.
[30] Id. at 758, 279 N.W. at 487.
[31] Brief for appellants at 19.
[32] See Blackledge v. Richards, 194 Neb. 188, 231 N.W.2d 319 (1975).
[33] Ponderosa Ridge LLC v. Banner County, 250 Neb. 944, 951, 554 N.W.2d 151, 157 (1996).
[34] See id.
[35] Scofield v. State, 276 Neb. 215, 753 N.W.2d 345 (2008).
[36] Id.
[37] Brief for appellants at 22.
[38] Myers v. Nebraska Invest. Council, 272 Neb. 669, 690, 724 N.W.2d 776, 797 (2006). See, also, Nebraska Mortgage Finance Fund, supra note 27.